[Civ. No. 42275. First Dist., Div. Two. Oct. 16, 1978.]

THOMAS H. CRAWFORD, Plaintiff and Appellant, v.
FRANK C. HERRINGER, as General Manager, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Thomas H. Crawford, in pro. per., for Plaintiff and Appellant.

Malcolm Barrett, Thomas Jackson and Francis Chin for Defendants and Respondents.

**OPINION**

**McBRIDE, J.**\*—This is an appeal from dismissal after a demurrer to the third amended complaint was sustained. The underlying action is (1) to

---

\*Assigned by the Chairperson of the Judicial Council.

recover money paid by appellant to Bay Area Rapid Transit District (BARTD) to cover his share of the estimated costs of printing an election pamphlet containing candidate qualification statements and (2) seeking to bar BARTD from collecting additional pamphlet costs.

We address the question whether appellant's action "involve[s] the legality of any tax, impost, assessment, toll, or municipal fine" within the meaning of Code of Civil Procedure section 86, subdivision (a)(1), thus vesting jurisdiction in the superior court.

Appellant's final pleading, his third amended complaint, alleges: (1) Appellant was a duly qualified candidate for election to the BARTD board of directors in the general elections held in November 1974. On or about July 11, 1974, the BARTD board of directors adopted a resolution providing that each candidate "who elects to file a statement of qualifications shall pay for the publication of such statement by depositing . . . $525.00. . . ."

(2) On or about August 27, 1974, appellant paid to BARTD the sum of $525 as a deposit for the cost of publishing his statement of qualifications. Sometime after January 1, 1975 (after the election) appellant alleges, respondents, "acting without authority illegally [']assessed['] plaintiff an additional charge of $128.65 for the cost of printing voter handbooks." Appellant made a timely challenge demanding the "assessment" be removed. Prior to filing suit appellant "exhausted all administrative remedies to remove the illegal [']assessment.[']"

(3) Respondents incurred costs for printing of voter handbooks which appellant alleges are "substantially in excess of the reasonable costs for such printing"; that they illegally incurred the costs in violation of competitive bidding requirements; that appellant made a timely demand for a pro rata refund of excess costs, but no refund has been made.

(4) "Defendants' administration of the matters related to the printing of voter handbooks in the BART election held in November, 1974, pursuant to Elections Code § 10012 (then § 10012.5) was confused, inept, arbitrary and constituted an unconstitutional interference with the electoral process."[1]

---

[1]Appellant's briefs make no attempt to separate the facts contained in his allegations from those he either personally "knows" or has shown by exhibits attached to his complaints. The trial court judgment must be evaluated by considering only the allegations of the complaint. Appellant's other "facts" are irrelevant because not pled.

The first ground listed by Code of Civil Procedure section 430.10 for objection to a complaint by demurrer is that "The court has no jurisdiction of the subject of the cause of action alleged in the pleading." Respondents' demurrers to the second and third amended complaints raised that ground, among others.

Code of Civil Procedure section 86 provides as follows: "(a) Each municipal and justice court shall have original jurisdiction of civil cases and proceedings as follows:

"(1) In all cases at law in which the demand, exclusive of interest, or the value of the property in controversy amounts to five thousand dollars ($5,000) or less, except cases which involve the legality of any tax, impost, assessment, toll, or municipal fine . . . ." Superior courts have original jurisdiction in all causes except those given by statute to other trial courts. (Cal. Const., art. VI, § 10.)

The parties to this appeal agree that if the action here involves the legality of a tax, impost, assessment, toll, or municipal fine it was within the superior court's jurisdiction, whereas if it did not involve such an issue the demurrer was properly sustained.[2] Their area of disagreement concerns whether a tax, impost, or assessment is involved here.

The printing charges sued upon here were billed to appellant under the authority of Elections Code section 10012, which provides in part: "The local agency may bill each candidate availing himself of these services [the publication of his qualification statement] a sum not greater than the actual prorated costs of printing, handling, and translating the candidate's statement, if any, incurred by the agency as a result of providing this service. Only those charges may be levied with respect to the candidate's statement and each candidate using these services shall be charged the same." ■ Relying heavily upon *City of Madera* v. *Black* (1919) 181

---

[2]It should be noted that the court's order sustaining the final demurrer stated that it was sustained because the complaint failed to state sufficient facts to constitute a cause of action. Thus, the stated ground indicates that the court granted the general demurrer, not the special demurrer for lack of jurisdiction. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 802-803, pp. 2415-2416.) However, an appellate court is not generally restricted to consideration of the ground stated by the trial court in its ruling on a demurrer. (See *Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 225 [36 Cal.Rptr. 537].) And in any case, the defect of lack of jurisdiction of the subject matter is one which need not be raised in any particular manner and may be considered first even on appeal from a judgment by a court lacking jurisdiction. (See 3 Witkin, *supra*, § 819, p. 2427.) Thus, the court's statement of other grounds for sustaining the demurrer cannot preclude disposition of this appeal on the ground that the superior court was without jurisdiction.

Cal. 306 [184 P. 397], appellant argues that the charges here constituted an "assessment" or tax "levy." He notes specific use of the term "levied" with respect to the charges allowed in Elections Code section 10012.

In *Madera,* an action was brought in the "recorder's court of Madera" to enforce the city's ordinance imposing a "monthly sewage rate or charge for the use of and connection with the sewer." The defendants demurrer alleged that the legality of a tax, impost, assessment, etc. was involved and that the action was therefore within the exclusive jurisdiction of the superior court (under former art. VI, § 5 of the Cal. Const., substantially similar to the provisions of Code Civ. Proc., § 86, subd. (a)(1)). The demurrer was overruled in the recorder's court and after trial the defendant prevailed. On appeal, however, the superior court retried the case, giving judgment for plaintiff.

As a preliminary step to its consideration of the validity of the sewer charge (which it struck as beyond the powers of the city), the *Madera* court was required to determine whether the superior court action should be considered an action within its original jurisdiction or its appellate jurisdiction, the determination depending upon whether a tax, impost, assessment, toll, or municipal fine was involved. The court stated its definitions of some of these terms as follows: "A tax, in the general sense of the word, includes every charge upon persons or property, imposed by or under the authority of the legislature, for public purposes. (*Perry* v. *Washburn,* 20 Cal. 350; *People* v. *McCreery,* 34 Cal. 454.) [¶] The word 'impost,' in its broader sense, means 'any tax or tribute imposed by authority, and applies as well to a tax on persons as to a tax on property.' (*Smith* v. *Turner* [*Passenger Cases*], 48 U. S., at p. 407, [12 L.Ed. 702, see, also, Rose's U.S. Notes].) A toll is a 'sum of money for the use of something, generally applied to the consideration which is paid for the use of a road, bridge, or the like, of a public nature.' (Bouvier's Dictionary, title 'Toll.')" (*Madera, supra,* 181 Cal. at p. 310.) It then concluded that the sewer charges constituted both an "impost" and a "toll." Further support was given to this conclusion by the court's discussion of the purpose of vesting original jurisdiction over such matters in the superior court: "The general purpose . . . obviously is to give to the sovereign power of the state, whether exercised generally or locally, the protection of having the legality of any exaction of money for public uses or needs cognizable in the first instance in the superior courts alone. In view of this purpose, it is apparent that the words used should

be applied in their broadest sense with respect to moneys raised for public purposes or needs." (181 Cal. at p. 311.)

The purpose of vesting superior courts with original jurisdiction in cases involving the legality of taxes has been further explained in *Unemp. etc. Com.* v. *St. Francis etc. Assn.* (1943) 58 Cal.App.2d 271, 280-281 [137 P.2d 64]: "The intent was that municipal courts should not decide such cases because there would then be no appeal to the higher appellate courts. Most tax cases are test cases. Few involve the validity of the statute. Most tax cases involve the interpretation of the taxing statute and the legality of a levy against a particular taxpayer. It is in the public interest that the Supreme Court should decide such cases in order that such questions can be finally determined for the entire state. If it should be held that municipal courts have jurisdiction of such cases with appeal to the appellate department of the superior court there would be no way of securing a decision that would be binding authority in the state. On close questions there would always be the possibility of conflicting decisions with consequent confusion in the enforcement of tax statutes. It was undoubtedly for these reasons that the Legislature saw fit to deny jurisdiction of such cases to municipal courts."

Courts following *Madera* have concluded that motor vehicle license fees were "in the nature of a tax" because they raised money for public purposes, such as maintenance of roads, highways and parks (*Marin Municipal Water Dist.* v. *Chenu* (1922) 188 Cal. 734, 736 [207 P. 251]), that unemployment insurance taxes exacted against employers are taxes within the meaning of the jurisdiction statute (*Cal. Emp. etc. Com.* v. *Citizens etc. Bk.* (1946) 73 Cal.App.2d 915, 917 [167 P.2d 752]; *Cal. Emp. etc. Com.* v. *Municipal Ct.* (1944) 62 Cal.App.2d 781, 784 [145 P.2d 361]; *Unemp. etc. Com.* v. *St. Francis etc. Assn., supra,* 58 Cal.App.2d 271), that business license fees are "taxes" for jurisdiction purposes (*Cowles* v. *City of Oakland* (1959) 167 Cal.App.2d Supp. 835 [334 P.2d 1069]) and that an initiative dealing with sewer user fees involved "taxes" for purposes of applying the constitutional restriction upon use of initiative to change tax policy (*Dare* v. *Lakeport City Council* (1970) 12 Cal.App.3d 864 [91 Cal.Rptr. 124], discussing Cal. Const., art. IV, § 23), that a $350 charge levied against an employer and paid to the state whenever an employee died without heirs from an injury covered by the Workers' Compensation Act was a tax (the tax was stricken because it was beyond the constitutional powers of the Industrial Accident Commission). (*Yosemite*

*L. Co.* v. *Industrial Acc. Com.* (1922) 187 Cal. 774, 783 [204 P. 226, 20 A.L.R. 994]; accord *People* v. *Yosemite Lumber Co.* (1923) 191 Cal. 267, 275, 276 [216 P. 39] (same case at a different stage).)

None of the above cited cases is close to the facts alleged here, and no closer case has been cited by the parties or discovered by us.[3] Thus, the question of whether the charges here should be considered "taxes," "assessments," "imposts," "tolls" or "municipal fines" for purposes of determining the court of original jurisdiction is one of first impression requiring that we decide whether the purposes of the statute would be met by providing original jurisdiction in the superior court.

When considering the issue raised by this case it is impossible to ignore the need for a workable standard for determining whether a particular government charge is a "tax, impost, assessment, toll, or municipal fine." But the kinds of charges levied by a municipal corporation or political subdivision are so numerous and varied that guidelines applicable to all charges cannot properly be fashioned in one case.[4] It is therefore appropriate that this court focus narrowly on the charges involved here.

The features which distinguish the charges here from normal taxes, imposts, or assessments are that the charges here are for the specific purpose of reimbursing the public entity for a service rendered, that the amounts of the charges are by law limited to the public entity's expenses, and that they are not levied on a regular or routine basis. Without expressing a view whether any one or two of those distinctions alone would be sufficient, it can safely be said that the three distinctions make the charges here totally different from normal taxes, imposts, or assessments.

---

[3]In *County of Los Angeles* v. *Southern Cal. Gas Co.* (1960) 184 Cal.App.2d 169 [7 Cal.Rptr. 471], the court found that rental charges for running a pipeline across a bridge were not "tolls." But the suit involved interpretation of that term in a federal statute requiring that bridges and highways built partly or wholly with federal funds be toll free. To suggest that the court would have reached the same conclusion if the issue had been whether jurisdiction would lie in the municipal court would be pure speculation.

[4]In addition to those charges no one would dispute were taxes or assessments, individuals or businesses may be charged fees for attending zoos, camps, museums, classes or parks. They may be billed for collection of garbage, repair of sidewalks or damage caused to public property. They may be asked to pay library fines or to pay for duplicate birth certificates.

Unlike the situation with the charges called "taxes" by courts following *Madera,* the collection of costs for printing candidate qualification statements does not create issues of statewide importance in the interpretation of the statute and the legality of the levy against a particular individual. (Cf. *Unemp. etc. Com.* v. *St. Francis etc. Assn., supra,* 58 Cal.App.2d 271, 280.) Rather, the issues are only ones related to computation of costs and equal division between the candidates. A court ruling on the validity of the cost computation or division by a particular public entity could have little precedential value for other public entity computations.

To the extent a candidate may seek to raise issues of the validity of the statute itself (as does appellant in his argument before this court) his or the public entity's ability to obtain appellate court review of the question is sufficiently protected by the availability of injunctive relief in the superior court (see 1 Witkin, Cal. Procedure (2d ed. 1971) Courts, §§ 134-136, pp. 404-406), and transfer to the Court of Appeal of important questions decided by appellate departments of the superior courts (Cal. Rules of Court, rule 62). But unlike the situation with taxing statutes, the presentation of questions of statewide importance in suits involving qualification statement fees will be the exception, not the norm. Thus, there is no need to interpret section 86, subdivision (a)(1) so broadly as to allow routine access to the appellate courts in cases dealing with fees exacted under Elections Code section 10012.[5]

In accordance with the above discussion, it is concluded that the superior court was without jurisdiction over appellant's complaint and that respondent's demurrer was properly sustained and the action properly dismissed. Appellant does not argue that jurisdiction in the superior court could be grounded upon the amount in controversy, the existence of equitable issues, or·any other ground.

---

[5]Appellant's argument that the relationship of these charges to the election process requires that the higher courts supervise their collection deserves some note. It is true that insofar as the operation of Elections Code section 10012 may affect a candidate's right to run for office, issues related to collection of these costs deserve appellate court attention. (See e.g., *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 350-353 [116 Cal.Rptr. 97, 525 P.2d 1273].) However, that fact does not make it necessary to give the superior court original jurisdiction in every collection case in which there is a defense that the tax was illegal. Once the important decisions concerning the legality of the statute have been determined, many, if not most, of these collection cases will involve only issues of computation or proper billing, issues not important to the electoral process itself.

The trial court judgment is affirmed.[6]

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied November 15, 1978, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1978.

---

[6]Note that under the recent Supreme Court decision in *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941], and cases cited therein appellant may obtain the benefit of equitable tolling of the statute of limitations if he files another action in the municipal court raising these issues. Since the dismissal was for lack of jurisdiction, the doctrine of res judicata will not prevent appellant from filing another complaint in the proper forum. (See 4 Witkin, Cal. Procedure (2d ed. 1971) §§ 173-175, pp. 3315-3318.)