[Civ. No. 18866. Third Dist. July 28, 1980.]

ALBERT MILLS, Plaintiff and Respondent, v.
COUNTY OF TRINITY et al., Defendants and Appellants.

COUNSEL

Ronald Barbatoe, District Attorney, for Defendants and Appellants.

Wells, Wingate & Small, W. Leonard Wingate and Edward A. Shuttle as Amici Curiae on behalf of Defendants and Appellants.

David R. Hammer for Plaintiff and Respondent.

Ronald A. Zumbrun, John H. Findley, Thomas E. Hookano and James L. Meyer as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Following enactment of article XIII A of the California Constitution (Prop. 13 on the June 6, 1978, ballot, commonly known as the Jarvis-Gann initiative), the Trinity County Board of Supervisors adopted resolution No. 73-78 providing both increased and new fees for county services in processing subdivision, zoning, and other

land-use applications. Plaintiff Mills then brought this action in the superior court against the county and its board challenging the constitutionality of the resolution and seeking to bar its enforcement through mandate and declaratory and injunctive relief. The trial court sustained plaintiff's claim that as a matter of law the new and increased fees under resolution No. 73-78 constitute a "special tax" within the meaning of article XIII A and thus cannot be imposed without a two-thirds affirmative vote of the electors of Trinity County. Since the board of supervisors had adopted the resolution without submitting it to the county electorate for approval, the court ordered summary judgment in plaintiff's favor and issued a peremptory writ of mandate. The writ ordered defendants to "desist and refrain from enforcing the provisions of Resolution Number 73-78" and further directed defendants to refund any and all monies received pursuant to the provisions of the resolution which exceeded amounts in effect under prior fee schedules.

Defendants appealed and filed an accompanying petition for a writ of supersedeas. We issued the writ, restraining enforcement of the judgment pending disposition of this appeal. (*Mills* v. *County of Trinity* (1979) 98 Cal.App.3d 859 [159 Cal.Rptr. 679].)

Although in its generality, article XIII A is not fatally vague, "in a number of particulars [it] is imprecise and ambiguous" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]) "and over a period of time will require judicial, legislative and administrative construction" (*id.*, at p. 244). We are now called upon in this appeal to determine whether the new and increased fees exacted by resolution No. 73-78 constitute a "special tax" within the meaning of section 4 of article XIII A. That provision states: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

 █ Utilizing the established rules of construction applicable to the interpretation of constitutional provisions (see *Amador Valley, supra*, 22 Cal.3d at pp. 245-246), we conclude that the "special tax" referred to in section 4 of article XIII A does not embrace fees charged in connection with regulatory activities which fees do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged and which are not levied for unrelated revenue pur-

poses. Accordingly, we shall reverse and remand for a factual determination of whether the fees in question are reasonably compensatory for the costs occasioned by the regulated activities.

■ "Tax" is a term without fixed definition. The word may be construed narrowly or broadly depending on its particular context and the purpose for which the definition is to be used. (See *Crawford* v. *Herringer* (1978) 85 Cal.App.3d 544, 548-551 [149 Cal.Rptr. 578]; *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 99-100 [308 P.2d 1].) In its broadest sense, a tax includes all charges upon persons or property for the support of government or for public purposes. (*City of Madera* v. *Black* (1919) 181 Cal. 306, 310-311 [184 P. 397]; Webster's New Internat. Dict. (3d ed. 1971) p. 2345.) In narrower contexts, the word has been construed to exclude charges to particular individuals which do not exceed the value of the governmental benefit conferred upon or the service rendered to the individuals (*County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 984 [156 Cal.Rptr. 777]; *Crawford* v. *Herringer, supra*, 85 Cal.App.3d at p. 550), and to exclude charges against particular individuals for governmental regulatory activities where the fees involved do not exceed the reasonable expense of the regulatory activities (*United Business Com.* v. *City of San Diego* (1979) 91 Cal. App.3d 156, 165 [154 Cal.Rptr. 263]).

■ Initiative measures as well as other general constitutional provisions should be interpreted liberally to give full effect to the framers' objective and the growing needs of the people. (*Amador Valley, supra*, 22 Cal.3d at pp. 244-245.) Animated by the foregoing principle, the trial court construed "tax" in its broadest meaning holding that, as used in section 4 of article XIII A, it "includes all charges, however labeled, which are to exact money for the support of government or for public purposes." ■ However, were we to accept the trial court's broad definition, the initiative measure as so construed would prohibit any increase in fees for governmental activities conferring a direct benefit on the specific individual who is charged for such benefit without the prior approval of two-thirds of the electors. In other words, a county would be powerless to raise charges for proprietary functions such as hospital services, public transportation, and garbage collection without the two-thirds stamp of approval. We do not believe the state electors intended to put local government in such a fiscal straightjacket.

Conceding that such a draconian result was probably never intended by the electorate, plaintiff asserts the interpretation adopted by the trial

court would exclude from the meaning of "special tax" fees charged for governmental activities *primarily* for the benefit of individuals and only incidentally for the benefit of the public. The minor premise of plaintiff's argument is that land-use charges imposed on the developer pursuant to the government's police power are primarily for the benefit of the public at large. Plaintiff thus concludes that such charges constitute taxes within the meaning of section 4 of article XIII A. Defendants, while not disputing the applicability of the "primary purpose" test, contend that it is the developer who is the primary beneficiary of an approval for land subdivision since the value of the land increases; the public, defendants assert, is merely the indirect beneficiary.

We eschew the public versus individual primary purpose test as a solvent of the instant litigation. The trial court also recognized the difficulty of embarking on such "spongy terrain" since all governmental activities by definition serve a public purpose. Under such a test, every charge imposed in connection with land-use activities as well as all other regulatory activities undertaken pursuant to the police power might well be categorized as a "special tax" since the police power is constitutional only if adopted to promote the health, safety, and welfare of the public as a whole. (*Euclid* v. *Ambler Realty Co.* (1926) 272 U.S. 365, 387 [71 L.Ed. 303, 310, 47 S.Ct. 114, 54 A.L.R. 1016]; *Associated Homebuilders etc. Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 604 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].)

We rely instead on statutory and judicial precedent (see *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 850 [59 Cal.Rptr. 609, 428 P.2d 593]) and contemporaneous legislative construction (*Amador Valley, supra*, 22 Cal.3d at p. 245) in determining that the state electorate did not intend to include within the meaning of "special tax" reasonable costs for processing land-use permits and applications.

Traditionally, courts have determined whether a local governmental charge denominated a regulatory fee is an exercise of the police power or the power to raise revenue by analyzing the use of the fee involved rather than relying on its label. (*United States Com.* v. *City of San Diego, supra*, 91 Cal.App.3d at p. 165.) The general rule is that a regulatory fee must not "exceed the sum reasonably necessary to cover the costs of the regulatory purpose sought" in order to be considered as a fee rather than a guise for a tax. (*Ibid.*; see also *County of Plumas* v. *Wheeler* (1906) 149 Cal. 758, 763 [87 P. 909]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 5, pp. 3991-3992; 9 McQuillin,

Municipal Corporations (3d ed. 1978) § 26.15, p. 29.) As long as the local enactments are not in conflict with general laws, the power to impose valid regulatory fees is not dependent on any legislatively authorized taxing power but exists pursuant to the direct grant of police power under article XI, section 7, of the California Constitution. (*County of Plumas* v. *Wheeler, supra*, 149 Cal. at pp. 761, 763.) Land-use regulations fulfill a legitimate public welfare purpose under the police power. (*Associated Homebuilders etc. Inc.* v. *City of Livermore, supra*, 18 Cal.3d at p. 604; *Associated Homebuilders etc. Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 651 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847].) Moreover, with respect to subdivision map activities in particular, Government Code section 66451.2 provides that "...local agenc[ies] may establish *reasonable* fees for the processing of tentative, final and parcel maps and for other procedures required or authorized by [the Subdivision Map Act] or local ordinance." (Italics added.)

Senate Bill No. 785, enacted in September 1979 after the enactment of article XIII A and the county's adoption of resolution No. 73-78, is sufficiently contemporaneous to serve as an interpretive guide. Its purpose is to furnish legislative authorization for counties and general law cities to impose special taxes subject to the two-thirds requirement of article XIII A. Section 50076, added to the Government Code by Senate Bill No. 785, clarifies the meaning of "special tax" as follows: "As used in this article, *'special tax' shall not include any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes.*" (Italics added.) Where the Legislature has enacted a law in light of a particular constitutional provision, a settled rule of construction is that the Legislature's interpretation of uncertain constitutional terms is entitled to great deference by the courts. (*San Francisco* v. *Industrial Acc. Com.* (1920) 183 Cal. 273, 279 [191 P. 26]; *Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692-693 [97 Cal.Rptr. 1, 488 P.2d 161].)

In addition, the "special tax" referred to in section 4 of article XIII A has been judicially construed to exclude special assessments charged for improvements to individual properties which do not exceed the benefits the assessed properties receive from the improvement. (*County of Fresno* v. *Malmstrom, supra*, 94 Cal.App.3d at p. 984.) The *Malmstrom* interpretation is consistent with that expressed by the Legislature in Senate Bill No. 785 (Gov. Code, § 50076).

Ballot arguments and analyses presented to the electorate may be helpful in determining the probable meaning of an intiative's uncertain language. (*Amador Valley, supra*, 22 Cal.3d at pp. 245-246.) Here, the arguments in favor of the constitutional initiative "support a conclusion that the article is aimed at *general* taxes and governmental spending." (Original italics; *County of Fresno* v. *Malmstrom, supra*, 94 Cal.App. 3d at p. 981.) There is nothing in the ballot arguments supporting article XIII A suggesting an intent to prevent local government from exacting fees reasonably commensurate with the cost of regulatory activity from those at whose instance the activity is conducted.

Finally, support for the Legislature's interpretation of "special taxes" is found in an initiative measure subsequently adopted by the California electorate in 1979; the measure placed limitations on governmental spending. (Cal. Const., art. XIII B.) Although applicable only to article XIII B, the phrase, "proceeds of taxes," is defined there as including, but not restricted to "all tax revenues and the proceeds to an entity of government, from (i) regulatory licenses, user charges, and user fees to the extent that such proceeds *exceed* the costs reasonably borne by such entity in providing the regulation, product, or service,..." (Italics added; Cal. Const., art. XIII B, § 8, subd. (c).)

Informed by those sources recognized as germane to the task of statutory interpretation, we conclude that "special taxes" under article XIII A, section 4 of the California Constitution do not embrace fees for land-use regulatory activities where the fees charged to particular applicants do not exceed the reasonable cost of the regulatory activities and are not levied for unrelated revenue purposes. Since the trial court held the fees imposed by resolution No. 73-78 constitute a "special tax" as a matter of law, the factual question whether or not such fees exceed the reasonable cost of the related regulatory activity has never been litigated. On remand that issue must be tried.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reynoso, J., and DeCristoforo, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 24, 1980.

*Assigned by the Chairperson of the Judicial Council.