TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

OPINION

of

DANIEL E. LUNGREN
Attorney General

CLAYTON P. ROCHE
Deputy Attorney General

:
:
:
:
:
:
:
:
:
:
:
:

No. 92-506

March 9, 1993

---

THE HONORABLE DAVID G. KELLEY, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1. Is a local agency prohibited from charging building permit and similar fees which exceed the estimated reasonable costs of providing the services rendered unless the amounts of the fees are approved by the electorate?

2. May a local agency charge building permit and similar fees based upon the Uniform Building Code Valuation Tables which are in excess of the estimated reasonable costs of providing the services rendered unless the amounts of the fees are approved by the electorate?

THE HONORABLE ROBERT PRESLEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion of the following question:

3. If a local agency charges building permit and similar fees based upon the Uniform Building Code Valuation Tables without supporting evidence regarding the relationship between the fees and the services rendered, are such fees valid?

CONCLUSIONS

1. A local agency is prohibited from charging building permit and similar fees which exceed the estimated reasonable costs of providing the services rendered unless the amounts of the fees are approved by the electorate.

2. A local agency may not charge building permit and similar fees based upon the Uniform Building Code Valuation Tables which are in excess of the estimated reasonable costs of providing the services rendered unless the amounts of the fees are approved by the electorate.

3.      If a local agency charges building permit and similar fees based upon the Uniform Building Code Valuation Tables without supporting evidence regarding the relationship between the fees and the services rendered, such fees are invalid to the extent they exceed the reasonable costs of providing the services rendered.

ANALYSIS

We are informed that it is a common practice for cities and counties to follow the schedule of fees contained in the Uniform Building Code Valuation Tables ("Tables") which set forth graduated building permit fees based upon the total valuation of the proposed construction as well as hourly rates for inspections and plan reviews. The three questions concern whether a city or county may charge building permit, plan inspection, and similar fees based upon those found in the Tables without an independent investigation as to whether each fee bears a reasonable relationship to the cost incurred in rendering the particular service. The questions posed also assume the possibility that if the fees are greater than the costs incurred, California law would require a two-thirds vote of the electorate to sustain their validity.

A.      The California Constitution

"The general rule is that a regulatory fee must not `exceed the sum reasonably necessary to cover the costs of the regulatory purpose sought' in order to be considered as a fee rather than a guise for a tax." (*Mills* v. *County of Trinity* (1980) 108 Cal.App.3d 656, 661; see also *County of Plumas* v. *Wheeler* (1906) 149 Cal. 758, 763; *Trend Homes, Inc.* v. *Central Unified School Dist.* (1990) 220 Cal.App.3d 102, 114.) Thus, such fees which exceed the reasonable costs of providing governmental services may constitute "special taxes" within the meaning of article XIII A of the California Constitution. (See Gov. Code, §§ 50075-50077; *City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 57; *Alamo Rent-A-Car, Inc.* v. *Board of Supervisors* (1990) 221 Cal.App.3d 198, 200-208; *Trend Homes, Inc.* v. *Central Unified School District, supra*, 220 Cal.App.3d 102, 114; *Bixel Associates* v. *City of Los Angeles* (1989) 216 Cal.App.3d 1208, 1218-1219.) Section 4 of article XIII A permits cities and counties to impose "special taxes" only after approval of a two-thirds vote of the electorate.[1]

In this opinion we need not determine whether building permit and similar fees in excess of the reasonable costs incurred in rendering the services are "special taxes" within the meaning of article XIII A. However, the constitutional amendment constitutes the historical background for the statutory schemes governing here, giving strong evidence of the legislative intent in enacting these provisions. (See, e.g., *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844; *People* v. *Henson* (1991) 231 Cal.App.3d 172, 177.) Such intent would be to ensure that local building permit and similar fees do not conflict in any way with article XIII A.

B.      The Government Code

The Government Code provisions most germane to our inquiry are found in sections 66012-66024, setting forth "Fees For Specific Purposes" (§§ 66012-66014), "Procedures For

_____

[1]Article XIII A, section 4 provides:

"Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

Adopting Various Fees" (§§ 66016-66018.5), and provisions regarding "Protests, Legal Actions, And Audits" (§§ 66020-66025).[2]  The primary section to which we direct our attention is section 66014.  Subdivision (a) of section 66014 provides:

> "Notwithstanding any other provision of law, when a local agency charges fees for zoning variances; zoning changes; use permits; building inspections; building permits; filing and processing applications and petitions filed with the local agency formation commission . . . ; the processing of maps . . . ; or planning services . . . ; those fees shall not exceed the estimated reasonable cost of providing the service for which the fee is charged, unless a question regarding the amount of the fee charged in excess of the estimated reasonable cost of providing the services or materials is submitted to, and approved by, a popular vote of two-thirds of those electors voting on the issue."

The introductory phrase "Notwithstanding any other provision of law" makes the rules set forth in the statute exclusive as to the fees enumerated therein, which include those germane to our inquiry. (See *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3; *State of California* v. *Superior Court* (1965) 238 Cal.App.2d 691, 695; 63 Ops.Cal. Atty.Gen. 660, 661-662 (1981).)  Applying this rule of "exclusivity," we find that fees such as building permit fees or fees for plan checking and approval (1) "shall not exceed the estimated reasonable cost of providing the services" for which they are issued or performed (2) "unless . . . the amount of the fee charged in excess of the estimated reasonable cost . . . is . . . approved by . . . popular vote . . . ."

Moreover, sections 66016-66018.5 mandate that (1) prior to levying new fees or service charges, or increasing existing ones, the local agency must hold a public hearing after giving interested parties access to the data relating to the estimated costs of the services to be provided, and (2) no fees shall be levied exceeding the reasonable estimated costs of the services without the requisite two-thirds vote of the electorate.

Finally, sections 66020-66025 provide a procedure for interested parties to protest the imposition of fees, and also to bring court actions to set aside or annul existing or newly adopted fees as unreasonable, or to determine whether they constitute "special taxes" within the meaning of article XIII A, section 4, of the Constitution.

The basic question at issue herein is whether a city or county may validly adopt the fee schedules found in the Tables (1) without investigating whether the fees set forth therein are "reasonable" under the requisite criteria set forth is section 66014 and (2) without a vote of the electorate.

The Tables are contained in a private publication issued annually by the International Conference of Building Officials ("ICBO"), applicable not only in California, but nationally.  We have been presented with no evidence that the fees set forth therein would approximate the estimated costs of the specified services in any particular local jurisdiction in California.  Nor have we been presented with evidence that *any* cost analysis has been made by the ICBO in this respect.

Accordingly, a local agency may not, under the statutory scheme provided in the Government Code, adopt the fee schedules set forth in the Tables, since it must have the requisite data "available to the public . . . indicating the amount of cost, or estimated cost, required to provide the service for which the fee or service charge is levied." (§ 66016, subd. (a).)  As to jurisdictions

---

[2]All references hereafter to the Government Code prior to footnote 3 are by section number only.

which already have adopted the fee schedules of the Tables, such current fees would be subject to protest (§ 66021) and judicial action (§ 66022). (See § 66014, subd. (b).)

Thus, the statutory scheme set forth in the Government Code leads to the conclusion that a city or county may not adopt or charge the fees set forth in the Tables. Nothing in the Government Code raises a presumption of reasonableness for such schedule of fees. As already indicated, the Tables are contained in a private publication of a nongovernmental association.

C.       The Health and Safety Code

Despite the mandate of the Government Code regarding a local agency's adoption of fees, it has been suggested that certain provisions of the State Housing Law (Health and Saf. Code, §§ 17910-17995.5)[3] permit cities and counties to adopt the fee schedules found in the Tables as an alternative to the requirements set forth in the Government Code. We reject the suggestion for a number of reasons.

Under the State Housing Law, the Department of Housing and Community Development ("Department") is directed to adopt building standards for "hotels, motels, lodging houses, apartment houses, and dwellings and structures accessory thereto" (§ 17921) that are "substantially the same requirements as are contained in . . . [T]he Uniform Building Code . . . ." (§ 17922, subd. (a); see 72 Ops.Cal.Atty.Gen. 180, 184-186 (1986); 55 Ops.Cal.Atty.Gen. 157, 158-159 (1972)). With certain exceptions not relevant here, "the provisions published in the State Building Standards Code or the regulations promulgated pursuant to section 17922 shall be applicable to" every city and county. (§ 17958; see *Briseno* v. *City of Santa Ana* (1992) 6 Cal.App.4th 1378, 1382-1383; 72 Ops.Cal.Atty.Gen. 180, 184 (1989).)

Since the fee schedules contained in the Tables are part of the Uniform Building Code, why are they not applicable to cities and counties under the provisions of sections 17922 and 17958?

First, the Tables have not been adopted by the Department under section 17922's grant of authority. The obvious reason is that the Tables are not "building standards" which the statute directs the Department to adopt. A building standard "regulates, requires, or forbids the method of use, properties, performance, or types of materials used" and includes requirements for the "architectural and design functions of a building." (§ 18909, subds. (a), (b); see also §§ 18940-18942; 75 Ops.Cal.Atty.Gen. 131, 132-136 (1992).)

In 55 Ops.Cal.Atty.Gen. 157 (1972), we concluded that the building standards adopted by the Department pursuant to section 17922 were to be substantive in nature rather that administrative. We stated:

"Although the Department is limited in adopting rules and regulations by the provisions of the specified model or uniform codes, this limitation applies only to substantive regulations. The statutes, when read as a whole, demonstrate that the reference in section 17922 to the "same requirements" was not intended to include requirements of an administrative nature.

". . . . . . .

---

[3]All references hereafter to the Health and Safety Code are by section number only.

"It is . . . the substantive criteria contained in the specified uniform codes, which criteria have been set forth for the propose of promoting safety and stability in building activities, to which the Department's attention is properly directed.

"That the Legislature did not intend to incorporate by reference the administrative provisions of the specified uniform codes is also evident from the fact that the State Housing Act includes sections which specifically designate procedures for administrative actions such as enforcement of the regulations and appeals from allegedly erroneous or unlawful applications of those regulations.  See sections 17921, 17930, 17931, 17932, 17952 and 17965.  These procedures may differ from those contained in the uniform codes.  *See* sections 204 and 303(a) of the Uniform Building Code, 1970 editions."  (Id., at p. 161.)

Consistent with our 1972 opinion, the Department has not adopted the fee schedules contained in the Tables but instead views the language of Government Code section 66014 ["fees shall not exceed the estimated reasonable cost of providing the service for which the fee is charged" without electorate approval] as controlling.  "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference."  (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460.)

The language of section 17922 is not the only reason compelling the Department to omit the Tables from its adoption of the Uniform Building Code.  As indicated in 55 Ops.Cal.Atty.Gen. 157, 161 (1972), the State Housing Law itself has its own administrative provisions that "may differ from those contained in the uniform codes."  Here, section 17951 expressly allows cities and counties to charge building permit and similar fees but only if the fees are "imposed pursuant to Section 66016 of the Government Code."  (§ 17951, subd. (c).)  Hence, all such fees imposed under the State Housing Law must not exceed, without voter approval, "the estimated amount required to provide the service."  (Gov. Code, § 66016, subd. (a).)  The applicable rules of statutory construction are: "`The mode prescribed is the measure of the power'" (*People* v. *Zamora* (1980) 28 Cal.3d 88, 98; see *Danville Fire Protection Dist.* v. *Duffel Financial & Const. Co.* (1976) 58 Cal.App.3d 241, 247; 72 Ops.Cal.Atty.Gen. 180, 188, fn. 7 (1989)), and the specific limitations of section 17951 regarding the imposition of fees control over the more general language contained in sections 17922 and 17958 (see *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420).

Accordingly, our construction of section 17951 harmonizes the State Housing Law with the requirements of Government Code section 66016.  The latter statute expressly refers to section 17951 and vice versa.  "[S]tatutes should be construed in harmony with other statutes on the same general subject."  (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665.)

We have also examined the legislative history of the relevant provisions of the State Housing Law, particularly sections 17922, 17951, and 17958.  (Stats. 1981, ch. 914; Stats. 1979, ch. 1152; Stats. 1970, ch. 1436; Stats. 1961, ch. 1844.)  We find an evident legislative intent to prohibit building permit and similar fees imposed under the State Housing Law from violating the "special taxes" provision of article XIII A of the Constitution.  "A statute should be construed whenever possible so as to preserve its constitutionality."  (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

Finally, our construction of sections 17922 and 17951 effectuates the Legislature's purpose in enacting Government Code section 66014 with its introductory phrase "[n]otwithstanding any other provision of law."

In sum, under both the Government Code and the Health and Safety Code, a local agency is required to limit its building permit and similar fees to the estimated costs of providing the services rendered. Any excess above such reasonable estimated costs requires approval by a two-thirds vote of the electorate.

* * * * *