[Civ. No. 29992. Fourth Dist., Div. Two. Mar. 5, 1985.]

BEAUMONT INVESTORS et al., Plaintiffs and Appellants, v.
BEAUMONT-CHERRY VALLEY WATER DISTRICT et al.,
Defendants and Respondents.

COUNSEL

Steven E. Smith for Plaintiffs and Appellants.

Redwine & Sherrill and Frederick A. Bryson for Defendants and Respondents.

OPINION

McDANIEL, J.—On this appeal, we are asked to consider whether a facilities fee enacted by a water district constitutes a "special tax" within the meaning of article XIII A, section 4, of the California Constitution (Prop. 13), and thus must be approved by a two-thirds vote of the electors in the district.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 1980, the Beaumont-Cherry Valley Water District Board of Directors (District and Board) adopted resolution No. 80-5 imposing a

"facilities fee" payable upon application for connection to its water system. About three months later, plaintiff, Beaumont Investors, Inc.,[1] applied for a hookup to the water system for its recently completed 80-unit apartment complex. It was then informed that a condition to the hookup would be payment to the District of a new facilities charge of $60,000 (80 units x $750). It declined to pay. As a result, the District refused to connect plaintiff to the water system. Plaintiff thereupon brought this action against the District and its Board (hereinafter referred to collectively as defendant) for declaratory relief and damages.[2]

The action was submitted to the trial court upon stipulated facts and documents which may be summarized as follows: In July of 1978, plaintiff first appeared before the defendant Board with plans for a development. Six months later, in February of 1979, the Board first considered the matter of a "facilities fee" for new users to finance the construction of certain water system facilities which new development would require. Board minutes reveal that the possibility of a facilities fee was generally discussed, but that no action was taken by the Board during the following year.

In September of 1979, the Board authorized and issued a "will serve" letter indicating the District's willingness to provide plaintiff's proposed development with domestic water. Shortly thereafter, plaintiff obtained the necessary building permits and commenced construction of its project.

In February of 1980, the Board approved the water plan prepared by the District engineer for plaintiff's development. The plan required plaintiff to install a 12-inch water main and indicated that this would be the limit of service in that particular pressure zone and that there would be no refunds to plaintiff on the main installation. The Board then authorized and sent to plaintiff a "Main Extension Agreement." The agreement was not signed by the Board secretary as required by the District rules. Nevertheless, plaintiff's president signed the agreement and returned it to defendant. Shortly thereafter, the Board proposed and plaintiff consented to certain changes in the original agreement.[3]

---

[1]The action was brought in the name of Beaumont Investors, Inc., a limited partnership, and its corporate and individual partners, American Housing Corporation, John E. Sims and Michael A. Heaman, hereinafter referred to collectively as plaintiff.

[2]Shortly after filing its complaint plaintiff sought and was granted a preliminary injunction prohibiting defendant from refusing to deliver water to plaintiff solely on the ground of plaintiff's refusal to pay the facilities fee.

[3]Although defendant claims that the agreement was not a valid contract because it was not signed by the Board secretary, the stipulation of facts entered into by both parties refers several times to the agreement as a "contract." In any event, the issue as to the validity of the contract is superfluous to our holding herein that the facilities charge is constitutionally invalid, and therefore we need not address it.

In early March 1980, after plaintiff had begun construction, the Board adopted a policy which would impose a $350 per unit facilities charge on new hookups, effective March 4, 1980, payable upon application for meter installation. Four months later, in July 1980, the Board amended the policy by increasing the facilities fee to $750 per unit. On September 4, 1980, the Board adopted resolution No. 80-5 memorializing the purpose of the aforesaid facilities fee and setting forth in detail the exact charges and procedures governing its imposition. At the same meeting, plaintiff's representative requested an exemption from the fee on the grounds that plaintiff had signed the main extension agreement and had begun construction before the enactment of the facilities charge, and hence that the $60,000 charge had not been incorporated into its construction financing. A motion by a Board member to exempt all those persons who had obtained a building permit before March 3, 1980, (the date of enactment of the $350 facilities fee, later modified to $750) died for lack of a second. The Board later denied plaintiff's request to be exempted from the facilities fee.

In its action, plaintiff attacked the validity of the fee on two broad fronts. First, plaintiff argued that it had acquired a "vested right" before the Board's imposition of the facilities charge, with the result that defendant was estopped from collecting the fee. Second, plaintiff argued that under various provisions of the Water Code as well as Proposition 13 and statutes promulgated pursuant thereto, defendant lacked authority to impose the fee.[4] With respect to the second prong of plaintiff's attack, plaintiff argued that the facilities charge violated Water Code section 22281.1, which provides that water districts may impose a charge for the right to connect to the system in an amount roughly equal to that proportion which the new pipeline or extension bears to the total area to be served. Plaintiff further argued that the facilities fee constituted a "special tax" within the meaning of Proposition 13, and thus, to be legally valid, required the affirmative vote of two-thirds of the electors in the District. Additionally, according to plaintiff, the fee was not exempt from the two-thirds vote requirement under Government Code section 50076, which specifically excludes from the def-

---

[4]Plaintiff raised two additional arguments of constitutional dimension at trial and reiterates them on appeal. These are: (1) that imposition of the fee on only *new* users is a denial of equal protection of the law, and (2) that imposition of the fee on plaintiff constitutes a retroactive application of law in violation of the due process clause. In view of our holding that the fee is an invalid "special tax" under California Constitution, article XIII A, section 4, we need not resolve these two issues. Nevertheless, we perceive no discriminatory classification in requiring new users to bear the burden of paying for public facilities the need for which is generated by their additional use. (*J. W. Jones Companies* v. *City of San Diego* (1984) 157 Cal.App.3d 745, 756-757 [203 Cal.Rptr. 580].) As for the due process argument, in view of our holding, we need not decide whether plaintiff acquired a vested or substantial right before enactment of the fee which would render its application to plaintiff invalid under the due process clause.

inition of "special tax" "any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes." Plaintiff argued that Government Code section 50076 was inapplicable because defendant had failed to show the fee did "not exceed the reasonable cost of providing the service" for which it was charged.

The trial court found for defendant, apparently concluding on balance, that the equities did not support plaintiff's estoppel argument. The trial court entered no findings or conclusions with respect to plaintiff's statutory and constitutional claims. Plaintiff now appeals from the judgment, and its contentions on appeal are the same as those which it urged below.

### DISCUSSION

In view of our conclusion that the facilities fee patently violates Proposition 13, we need not dwell on plaintiff's "vested right" theory.

■ Nor are we persuaded by plaintiff's contention that the facilities fee fails under Water Code section 22281.1. This section, entitled "Connection Charge," concerns reimbursement by new users to the District for the actual expenses advanced by the District to enable hookup to the system. The charge at issue here, denominated a "facilities fee," on the other hand, was designed to reimburse the District for the future costs of constructing new water system facilities necessitated by new development. Clearly, therefore, the fee at issue here is not a "connection charge." The mere fact that the facilities fee was made *payable* at time of connection does not by that fact alone transmute it into a "connection charge" within the meaning of Water Code section 22281.1.

■ Absent authorization under Water Code section 22281.1, plaintiff further contends that the Water Code provides no authority for the imposition of a "facilities fee" of the type at issue here. We disagree. Water Code section 22280 provides, in pertinent part, that defendant "may in lieu in whole or in part of levying assessments fix and collect charges for any service furnished by the district, including any and all of the following:" The statute then goes on to list six kinds of services for which charges may be imposed, none of which is relevant to the case here. However, this list of six services is obviously not exclusive. Water Code section 20512 defines the word "include" as follows: " 'Include' except when used in relation to the inclusion of land into a district does not necessarily exclude matters not enumerated." The construction of new facilities for the provision of water

services is clearly an activity for which the District may exact a charge payable at the time of application for connection to the system.

■ We turn then to the final and, in our view, dispositive issue raised by plaintiff. Does the facilities fee enacted by defendant constitute a "special tax" under Proposition 13 and thus require an affirmative vote of two-thirds of the qualified electors in the District? The record before us compels the conclusion that it does, and thus that the facilities fee, as defendant attempted to enforce it, is invalid.

Proposition 13, section 4, provides, subject to certain exceptions not applicable here, that, "Cities, counties and special districts by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district . . . ."

■ To implement the authorization granted by section 4 to cities, counties and special districts to impose "special taxes," the Legislature enacted sections 50075 and 50076 of the Government Code. (*Mills* v. *County of Trinity* (1980) 108 Cal.App.3d 656, 662 [166 Cal.Rptr. 674].) Section 50075 provides: "It is the intent of the Legislature to provide all cities, counties and districts with the authority to impose special taxes, pursuant to the provisions of Article XIII A of the California Constitution." Section 50076 then *excludes* from the definition of "special tax" any "user fee," i.e., "any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes." ■ Hence, any fee which falls within the definition of a service or regulatory fee under section 50076 is not a "special tax" under Proposition 13 and thus is exempt from the requirement of a two-thirds affirmative vote by the District's qualified voters.

■ Both plaintiff and defendant agree that the facilities fee enacted by defendant, if reasonably related to the cost of the service for which it was imposed, would fall within the scope of the "service" fee defined by Government Code section 50076, and would thus lie outside of the definition of "special tax" as contemplated by Proposition 13. Both agree further that defendant, a statutorily created irrigation district, is within the ambit of Proposition 13.

Hence, the sole issue before us boils down to whether the record demonstrates that the facilities fee sought to be imposed by defendant does or does not "exceed the reasonable cost" of constructing the water system improvements contemplated by the District. Such a showing would require, at the minimum, evidence of (1) the estimated construction costs of the

proposed water system improvements, and (2) the District's basis for determining the amount of the fee allocated to plaintiff, i.e., the manner in which defendant apportioned the contemplated construction costs among the new users, such that the charge allocated to plaintiff bore a fair or reasonable relation to plaintiff's burden on, and benefits from, the system. (*Mills* v. *County of Trinity, supra,* 108 Cal.App.3d at pp. 659-660; *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 983-985 [156 Cal.Rptr. 777].)

■ Before considering what sort of evidentiary showing would satisfy these requirements, however, we encounter a threshold question as to burden of proof. Defendant raised the contention at oral argument that *plaintiff* ought properly to have the burden of proving the fee exceeds the reasonable cost of providing the service for which the fee is charged. (Gov. Code, § 50076.) We disagree. ■ As the California Supreme Court, in upholding the validity of Proposition 13 against a multitude of constitutional challenges stated, it is the "solemn duty" of courts " ' ' "to jealously guard" ' ' " and effectuate the initiative process, "it being ' "one of the most precious rights of our democratic process.' " [Citation.]" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 248 [149 Cal.Rptr. 239, 583 P.2d 1281].) ■ The basic purpose of Proposition 13, the *Amador* court observed, was "to accomplish a new system of taxation which may provide substantial tax relief for our citizens." (*Id.,* at p. 228.) To that end, section 4 of that amendment imposed a general "restriction" upon the local authorities' power to impose taxes. (*Id.,* at p. 220.) As emphasized by the court in *Los Angeles County Transportation Com.* v. *Richmond* (1982) 31 Cal.3d 197, 201 [182 Cal.Rptr. 324, 643 P.2d 941], "[W]e held in *Amador* that section 4 is actually a *limitation* on the imposition of 'special taxes' because it requires a two-thirds vote for their approval." (Fn. omitted; italics supplied.) ■ In later enacting Government Code section 50076, the Legislature provided a narrow exception to the general limitation of section 4. Section 50076 omits from the category of "special taxes," and therefore from the requirement of two-thirds voter approval, any fee which can be shown to be reasonably related to the cost of the service for which it is imposed.

■ The purpose of Proposition 13 being to impose a broad constitutional restriction on the power of local agencies to impose "special taxes," subject to the limited statutory exception contained in Government Code section 50076, it rightfully follows that the local agency which seeks to avoid the general rule should have the burden of establishing that it fits the exception. Still another reason for placing the burden on the local agency is to ensure an adequate record of governmental compliance with the statute. Otherwise, if the taxpayer were forced to prove that the fee is not reasonably

related to the service for which it was imposed, local agencies would gain a litigational advantage by *not* undertaking, or at least not recording, any effort to relate the cost of the service to the fee charged. Such a perversion of process was surely not intended by the voters or the Legislature. In sum, the burden of establishing that it satisfied the requirements of Government Code section 50076 properly rested with defendant.

A recent case which well illustrates the factual showing necessary to be exempt from Proposition 13 is *J. W. Jones Companies* v. *City of San Diego, supra,* 157 Cal.App.3d 745. In *Jones,* as in the case here, a local governmental agency (the City of San Diego) determined that future growth and development in certain designated areas would generate a need for the construction of a broad spectrum of public works, including water mains, streets, sidewalks, parks, school buildings and police stations. Under a San Diego ordinance, the city undertook to formulate for each designated "area of benefit" a proposed apportionment of cost for future public works among developments within the area in proportion to the estimated benefits received by the developments. This process yielded an amount, deemed a "facilities benefit assessment" (FBA), which the city then charged each developer for the right to obtain a building permit. (*Id.,* at pp. 750-751.) J. W. Jones Companies (plaintiff) refused to pay the FBA levied against it and sought a peremptory writ of mandate to set aside the FBA resolution on the grounds, among other things, that it constituted a "special tax" in violation of Proposition 13. The trial court authorized issuance of the writ. The *Jones* court reversed. On the basis of the record before it, the court concluded that the "FBA assessments [did] not exceed the cost of the improvements attributable thereto," and thus were not "special taxes" under Proposition 13. (*Id.,* at p. 756.) The record in *Jones* included the city report which specified the precise cost of the public facilities to be charged to developers within the relevant area of benefit, and the formula by which these costs were apportioned among developers. (*Id.,* at p. 750.) As the *Jones* court stated: "The city in the spread of the FBA assessments considered the amount apportioned to each parcel in the area of benefit in contemplation of the proposed public facilities. As we noted in our factual presentation, the report adopted by the city council includes a comprehensive analysis of the [planned development area], its component parts developed and undeveloped and the public facilities required to serve them and their anticipated population." (*Id.,* at p. 756.)

The record before us could not present a sharper contrast with the record in *Jones.* As noted earlier, the Board resolution declares the need to construct certain capital improvements. The resolution further recites that the Board "has authorized a study entitled 'Analysis of Rates and Changes,'

dated June, 1980, for the purpose of exploring means by which the necessary funding for the said capital improvements can be obtained." The resolution then declares the need for a facilities fee "to finance the cost of the said improvements." The foregoing language thus suggests that in adopting the facilities fee the Board relied upon findings contained in the study entitled "Analysis of Rates and Changes." Presumably, therefore, the facts necessary to establish a reasonable relation between the estimated cost of the capital improvements and the facilities fee imposed on plaintiff could be found in this "study." Curiously, however, defendant failed to make this study a part of the trial court record. Notwithstanding this rather glaring omission, defendant gamely cites us to numerous pages in the clerk's transcript on appeal in support of its contention that the fee did not exceed a reasonable apportionment of the costs of the capital improvements. However, an examination of these references yields nothing whatsoever of any substance or relevance on the issue of the construction costs and their reasonable apportionment among new users.

Defendant first cites us to the minutes of various Board meetings which refer to the monthly reports of the District "Field Foreman." While these reports contain some information on the capacity and costs of the current water system, there is nothing specific in them which would have provided any guidance to the Board in ascertaining and apportioning the estimated costs of the contemplated future facilities. Defendant next refers us to the minute summary of the "District Engineer's" report on plaintiff's main extension application. Again, while this minute summary contains some information on the capacity of the current system in the area of plaintiff's development, it contains nothing whatsoever of any substance concerning the need, costs or methods of financing the future construction contemplated in resolution 80-5. Lastly, defendant cites us to the minutes of a meeting in which the Board commissioned a "study" to analyze its "water distribution system" as the first stage of a "Water System Master Plan," as well as a meeting in which another study entitled "Preliminary Draft of Water System Evaluation and Immediate Facility Needs" was presented to the Board. However, neither of these "studies" is of record, and nothing which they might have contained of any relevance to the issues before us is reported in the Board's minutes.[5]

---

[5]It is interesting to note that the "Water System Evaluation and Immediate Facility Needs" study was presented at the same meeting of September 4, 1980, in which the Board enacted resolution 80-5. The minutes of this meeting indicate that the Board decided "to hold a study session" one week later "to consider this Study . . . . The Water System Evaluation Study will then be considered at the next regularly scheduled meeting." Given this chronology, we are hard pressed to understand how this particular study provided any factual basis for the enactment of the facilities fee.

In sum, the record before us contains *no* solid evidence from which we could conclude that the Board's decision was, as defendant urges, an "informed" one. *Condit* v. *Solvang Mun. Improvement Dist.* (1983) 146 Cal.App.3d 997 [194 Cal.Rptr. 683], upon which defendant relies, is plainly distinguishable from the case here in that the record therein contained "the specific data and framework" relied upon by the defendant improvement district in enacting its water connection fee. (*Id.,* at p. 1000.) Here, there is no evidence in the record from which we could conclude that the facilities fee "does not exceed the reasonable cost of providing the service . . . for which the fee is charged . . . ." (Gov. Code, § 50076.) Therefore, we must hold that the facilities fee constitutes a "special tax" within the meaning of Proposition 13. As the fee has not been submitted to the electorate and approved by two-thirds of the qualified electors in the district, it was enacted in violation of Proposition 13, and thus may not be enforced against plaintiff.

## DISPOSITION

The judgment is reversed and the trial court is directed to issue an injunction enjoining defendant from enforcing resolution 80-5 against plaintiff.

Morris, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied April 3, 1985, and respondents' petition for review by the Supreme Court was denied June 6, 1985. Kaus, J., and Reynoso, J., were of the opinion that the petition should be granted.