[No. C062791. Third Dist. Dec. 13, 2010.]

CALIFORNIA TAXPAYERS ASSOCIATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Silverstein & Pomerantz, Amy L. Silverstein, Edwin P. Antolin, Johanna W. Roberts and Charles E. Olson for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Paul D. Gifford, Assistant Attorney General, William L. Carter and Jill Bowers, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**BUTZ, J.**—We conclude here that Revenue and Taxation Code section 19138,[1] a corporate tax penalty provision for understating such taxes by more than $1 million, is just that—a penalty—and therefore not subject to the two-thirds legislative vote requirement for a "state tax" increase as required by article XIII A, section 3, of the state Constitution (enacted as part of Prop. 13 in 1978). We also conclude that this statute, as properly construed, affords due process. Accordingly, we shall affirm the judgment.

### PROCEDURAL BACKGROUND

California Constitution, article XIII A, section 3 (hereinafter, article 13A, section 3), requires in relevant part that "any changes in state taxes enacted

---

[1] Undesignated statutory references are to the Revenue and Taxation Code.

for the purpose of increasing revenues collected pursuant thereto whether by increased rates or changes in methods of computation must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature . . . ."

In this lawsuit, a taxpayers group which represents individual and corporate taxpayers, the California Taxpayers Association (CalTax), has sued the state Franchise Tax Board (the Board). CalTax claims that section 19138 is unconstitutional under article 13A, section 3, for not meeting this legislative vote requirement, and is also unconstitutional on procedural due process grounds. The trial court disagreed. So do we, exercising our independent review on a matter of legal interpretation (see *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 873–874 [64 Cal.Rptr.2d 447, 937 P.2d 1350] (*Sinclair*)).[2]

■ Section 19138 imposes a "penalty" on corporate taxpayers if they understate their tax liability by over $1 million for any taxable year.[3] (§ 19138, subd. (a)(1).) The penalty equals 20 percent of the understatement. (§ 19138, subd. (b).) The understatement constitutes the difference between the correct tax liability and the tax reported on the taxpayer's original return or amended return filed on or before the original or extended due date. (*Ibid.*)

---

[2] The Board previously demurred unsuccessfully to CalTax's complaint, claiming that CalTax lacked standing and had not first paid the tax, and that this lawsuit was not ripe. CalTax's associational standing and this lawsuit's issue of the constitutionality of a statute render this matter properly before us, notwithstanding the Board raising these issues again in its respondent's brief on appeal. (See, e.g., *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2003) 106 Cal.App.4th 1178 [132 Cal.Rptr.2d 1] [a taxpayers association could maintain an action for declaratory relief challenging the constitutionality of a city utility user tax].)

[3] Enacted in 2008, former section 19138 stated as follows (all references herein are to this version unless otherwise stated):

"(a)(1) A taxpayer subject to the tax imposed under Part 11 (commencing with Section 23001) [(i.e., Corporation Tax Law)] with an understatement of tax in excess of one million dollars ($1,000,000) for any taxable year shall be subject to the penalty imposed under this section.

"(2) For taxpayers that are required to be included in a combined report under Section 25101 or authorized to be included in a combined report under Section 25101.15, the threshold amount prescribed in paragraph (1) shall apply to the aggregate amount of tax liability under Part 11 (commencing with Section 23001) for all taxpayers that are required to be or authorized to be included in a combined report.

"(b) The penalty under this section shall be an amount equal to 20 percent of any understatement of tax. For purposes of this section, 'understatement of tax' means the amount by which the tax imposed by Part 11 (commencing with Section 23001) exceeds the amount of tax shown on an original return or shown on an amended return filed on or before the original or extended due date of the return for the taxable year. For any taxable year beginning before January 1, 2008, the amount of tax paid on or before May 31, 2009, and shown on an amended return filed on or before May 31, 2009, shall be treated as the amount of tax shown on an original return for purposes of this section.

■ Section 19138 became effective on December 19, 2008.[4] However, section 19138 applies retroactively to each taxable year starting on January 1, 2003, for which the statute of limitations on assessment has not expired. (§ 19138, subd. (h).) For these prior taxable years, though, a taxpayer might have reduced the likelihood of an understatement penalty by filing an amended return by May 31, 2009 (and paying that tax), which would have been treated as the amount of tax shown on an original return for those years in determining any understatement. (*Id.*, subd. (b).)

No penalty is imposed where the understatement is attributable (1) to specified changes in law, or (2) to the taxpayer's reasonable reliance on a ruling by the Board's chief counsel. (§ 19138, subds. (f), (g).)

■ The protest and appeal procedures of the Revenue and Taxation Code that govern deficiency assessments do not apply to the assessment or

"(c) The penalty imposed by this section shall be in addition to any other penalty imposed under Part 11 (commencing with Section 23001) or this part.

"(d) Article 3 (commencing with Section 19031), relating to deficiency assessments, shall not apply with respect to the assessment or collection of any penalty imposed by subdivision (a).

"(e) A refund or credit for any amounts paid to satisfy a penalty imposed under this section may be allowed only on the grounds that the amount of the penalty was not properly computed by the Franchise Tax Board.

"(f)(1) No penalty shall be imposed under this section on any understatement to the extent that the understatement is attributable to a change in law that is enacted, promulgated, issued, or becomes final after the earlier of either of the following dates:

"(A) The date the taxpayer files the return for the taxable year for which the change is operative.

"(B) The extended due date for the return of the taxpayer for the taxable year for which the change is operative.

"(2) For purposes of this subdivision, a 'change of law' means a statutory change or an interpretation of law or rule of law by regulation, legal ruling of counsel, within the meaning of subdivision (b) of Section 11340.9 of the Government Code, or a published federal or California court decision.

"(3) The Franchise Tax Board shall implement this subdivision in a reasonable manner.

"(g) No penalty shall be imposed under this section to the extent that a taxpayer's understatement is attributable to the taxpayer's reasonable reliance on written advice of the Franchise Tax Board, but only if the written advice was a legal ruling by the Chief Counsel, within the meaning of paragraph (1) of subdivision (a) of Section 21012.

"(h) This section shall apply to each taxable year beginning on or after January 1, 2003, for which the statute of limitations on assessment has not expired." (Added by Stats. 2008, 1st Ex. Sess. 2007–2008, ch. 1, § 5, eff. Dec. 19, 2008.)

[4] In October 2010, section 19138 was amended (Stats. 2010, ch. 721, § 18, eff. Oct. 19, 2010) so that the penalty now applies, for each taxable year beginning on or after January 1, 2010, to an understatement of tax that exceeds *the greater of* $1 million *or* 20 percent of the tax shown on an original return or shown on an amended return filed on or before the original or extended due date of the return for the taxable year. For our purposes, this amendment is not substantively different from the former version of section 19138 we construe in this opinion.

collection of the section 19138 penalty. (§ 19138, subd. (d); see § 19031 et seq.) Furthermore, a refund or credit for any amounts paid to satisfy the section 19138 penalty "may be allowed only on the grounds that the amount of the penalty was not properly computed by the . . . Board." (§ 19138, subd. (e).)

## DISCUSSION

### I. The Section 19138 Penalty Is Not a State Tax nor a State Tax Increase Subject to the Two-thirds Legislative Vote Requirement of Article 13A, Section 3

To decide this constitutional issue, we must first set forth the analytical framework by which it will be decided. There is no decision directly on point.

### A. *Analytical Framework*

CalTax looks to the analytical framework employed in a series of decisions involving whether a local government fee is actually an unconstitutional special tax under article XIII A, section 4 of the state Constitution. That constitutional provision (which was also enacted in 1978 as part of Prop. 13, like art. XIII A, § 3, with which we deal) specifies that local governments may not impose special taxes unless two-thirds of their voters approve them.

According to this series of decisions, which begins with *Beaumont Investors v. Beaumont-Cherry Valley Water Dist.* (1985) 165 Cal.App.3d 227 [211 Cal.Rptr. 567] (*Beaumont*), because one of the purposes of Proposition 13 was to impose a general constitutional restriction on the power of local governments to impose "special taxes"—subject only to a limited statutory exception (Gov. Code, § 50076) for "fees" which do not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged—two conclusions follow: (1) the local government which seeks to avoid this general constitutional rule "should have the burden of establishing that it fits the [limited statutory] exception" (*Beaumont*, at p. 235); and (2) placing the burden on the local government ensures an adequate record of governmental compliance with the exception; that is, the local government is in the position to show that the fee charged is reasonably related to the cost of providing the service or regulatory activity. (*Beaumont, supra,* 165 Cal.App.3d at pp. 234–236; *City of Dublin v. County of Alameda* (1993) 14 Cal.App.4th 264, 281–282 [17 Cal.Rptr.2d 845]; *Bixel Associates v. City of Los Angeles* (1989) 216 Cal.App.3d 1208, 1216 [265 Cal.Rptr. 347];

*San Diego Gas & Electric Co. v. San Diego County Air Pollution Control Dist.* (1988) 203 Cal.App.3d 1132, 1145–1146 [250 Cal.Rptr. 420]; see also *California Assn. of Prof. Scientists v. Department of Fish & Game* (2000) 79 Cal.App.4th 935, 938–939, 945 [94 Cal.Rptr.2d 535] [applying *Beaumont* to a state government fee].)

CalTax couples this analytical framework with the general principle that an imposition is a "tax" if revenue is its primary purpose, and regulation is merely incidental. (*Sinclair, supra,* 15 Cal.4th at p. 880; see also *id.* at p. 874.) From this marriage of legal guidelines, CalTax argues that the section 19138 penalty is "presumptively" a tax under the reasoning of the *Beaumont* line of decisions (see *Knox v. City of Orland* (1992) 4 Cal.4th 132, 147 [14 Cal.Rptr.2d 159, 841 P.2d 144] [suggesting that if the situation is as in *Beaumont*, an imposition is "presumptively" a tax]); this presumption is confirmed because the section 19138 penalty raises revenue as its primary purpose; and the state has not met its burden here to show otherwise.

We are not persuaded by CalTax's argument as to the analytical framework that applies here. We do not deal with a legal context in which a "tax" is the general rule and a "fee" the limited exception. We do not deal with a situation in which only the government has the information to show the cost of the service or regulatory activity paid for by the fee. In short, we do not deal with the situation underlying the *Beaumont* line of decisions. Instead, we deal with a statutory "penalty" that applies only if a "tax" has not been fully paid.

Consequently, instead of applying the *Beaumont* analytical framework to determine whether the section 19138 "penalty" is actually a "state tax" or a "state tax increase," requiring a two-thirds legislative vote tally under article 13A, section 3, we will employ the traditional analytical framework for determining a statute's constitutionality.

■ This traditional analytical framework is roughly the converse of the *Beaumont* framework: A statute is presumed to be constitutional and the burden is on the challenger to show otherwise.

■ The traditional framework has been phrased in the following terms: "Legislatures are presumed to have acted constitutionally. [Citation.] [Consequently,] [s]tatutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears." (*Southern Pacific Pipe Lines, Inc. v. Board of Supervisors* (1992) 9 Cal.App.4th 451, 459–460 [11 Cal.Rptr.2d 745].) "[A] statute must be interpreted in a manner, consistent with the statute's language and purpose, that eliminates doubts as to the statute's

constitutionality." (*Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1151 [108 Cal.Rptr.2d 445, 25 P.3d 649].) " 'If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.' " (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 548 [110 Cal.Rptr.2d 412, 28 P.3d 151].) A "statute will not be invalidated if it is readily susceptible to a narrowing construction that would make it constitutional." (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 464 [125 Cal.Rptr.2d 534].)

With this traditional analytical framework in mind, we turn to the substantive issue at hand: whether section 19138 is unconstitutional because it is a "state tax" or a "state tax increase" subject to the two-thirds legislative vote requirement of article 13A, section 3. As we shall explain, CalTax has not carried its burden of showing this.

### B. Substantive Issue

We begin with the language of section 19138. The section said it is a "penalty." While this legislative label is not the end of the matter, it certainly is a start. (*Weekes v. City of Oakland* (1978) 21 Cal.3d 386, 392 [146 Cal.Rptr. 558, 579 P.2d 449] ["The character of a tax is ascertained from its incidents, not its label."].) In line with this language, section 19138's two basic provisions are in the nature of a penalty as well, stating (1) "A taxpayer subject to the tax imposed under [the Corporation Tax Law] with an understatement of tax in excess of one million dollars ($1,000,000) for any taxable year shall be subject to the penalty imposed under this section" (§ 19138, subd. (a)(1)); and, (2) "The penalty under this section shall be an amount equal to 20 percent of any understatement of tax. For purposes of this section, 'understatement of tax' means the amount by which the tax imposed by [the Corporation Tax Law] exceeds the amount of tax shown on an original return or shown on an amended return filed on or before the original or extended due date of the return for the taxable year" (§ 19138, subd. (b)).

Citing general principles set forth in *Sinclair, supra,* 15 Cal.4th 866, CalTax counters that regardless of section 19138's designation as a penalty, the section actually functions as a tax. *Sinclair* noted, in discussing the tax/fee distinction in the Proposition 13 context, that although the term "tax"

has no fixed meaning, taxes are usually imposed in a compulsory way for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. (*Sinclair, supra,* 15 Cal.4th at p. 874.) *Sinclair* also noted language from an appellate court decision that if revenue is the primary purpose and regulation is merely incidental, the imposition is a tax, but if regulation is the primary purpose, the mere fact that revenue is also obtained does not make the imposition a tax. (*Id.* at pp. 879–880, citing *United Business Com. v. City of San Diego* (1979) 91 Cal.App.3d 156, 165 [154 Cal.Rptr. 263]; see also *Weisblat v. City of San Diego* (2009) 176 Cal.App.4th 1022, 1043 [98 Cal.Rptr.3d 366].) From this, CalTax argues that section 19138 is a tax because its primary purpose was to raise revenue to balance the 2008–2009 state budget.

CalTax's primary purpose argument parallels its misguided tax/fee argument about the determinative analytical framework that applies here. The primary purpose argument meets a similar fate.

■ The question of whether an imposition is a "tax" is not simply a question of raising revenue. A penalty, of course, directly raises revenue by imposing penalties. A penalty, as well, regulates conduct (and indirectly raises revenue) by deterring those tempted not to pay their taxes fully. One way to measure the relative importance of revenue versus regulation is to track the revenues the imposition brings in. Over time, a tax will generally yield relatively stable revenues (with a relatively stable economy and tax rate, a tax being a compulsory collection of revenues for governmental purposes), but a penalty, if it is enforced effectively, will generally decrease in direct revenue amount. The record shows the projected revenue from the section 19138 penalty to be $1.4 billion in its first year of operation (which also includes its retroactive years of operation, and encompasses direct and indirect revenue), with a decline in the next three successive years (all the years projected) to $75 million, $45 million, and $30 million. ■ This is not evidence of a tax, because a tax has as its primary purpose the raising of revenue.

This view of section 19138 as a penalty, and not a tax, is also supported by three other observations.

■ First, as the trial court aptly recognized, "there is one important distinction between a penalty and a tax: while a tax raises revenue if it is obeyed, a penalty raises revenue only if some legal obligation is disobeyed." In line with being a penalty, section 19138 directly raises revenue only if a corporate taxpayer has disobeyed a legal obligation (by understating its actual tax liability by over $1 million). Furthermore, the continuous decline, over time, in projected revenue from section 19138 concretely illustrates this

aspect of a penalty: As more corporations fully pay their taxes to avoid the penalty, the penalty revenue declines.

■ A second observation, and one that carries a certain irony, is found in the language of article 13A, section 3 itself, the very provision that CalTax relies upon to claim section 19138 is unconstitutional here. Article 13A, section 3, stated that "any changes in state taxes enacted for the purpose of increasing revenues collected pursuant thereto *whether by increased rates or changes in methods of computation* must be imposed by an Act passed by [at least two-thirds of the Legislature]." (Italics added.)[5] Section 19138 imposes a penalty for understating tax liability. It does not impose an increase in the tax rate or a change in the method of tax computation.[6]

The third observation concerns the stage on which section 19138 debuted: an extraordinary session of the Legislature that dealt with the 2008–2009 state budget deficit. (Stats. 2008, 1st Ex. Sess. 2007–2008, ch. 1, § 5.) Against this background, CalTax argues that the primary purpose of former section 19138 was to raise revenue to balance that budget. Again, though, CalTax has focused on the mere raising of revenue to conclude that section 19138 is a tax. The question of whether an imposition is a tax, as we have seen, is not simply a question of raising revenue, but *how* that revenue is raised. The projected revenues from section 19138's first year of operation are significant, but thereafter these projections decline steeply and continuously. Again, this is the mark of a penalty, not a tax. If death and taxes are the only two things certain in life, section 19138 is much more death than tax, given this rate of dissipation.

Finally, CalTax claims that construing section 19138 as a penalty rather than a tax is undercut by its legislative history of enactment during a budget deficit; by its lack of legislative findings regarding tax avoidance; by its large rate of penalty that encourages tax overpayment; and by its lack of "good faith" defenses that often accompany tax penalties. We reject these four points in turn.

As just noted, we have rejected CalTax's point about section 19138's enactment during a budget deficit.

As for CalTax's point about no legislative findings, the Legislative Counsel's Digest, which described Senate Bill No. 1X 28 (2007–2008 1st Ex. Sess.) that enacted section 19138, stated as pertinent: "The Personal

---

[5] Article 13A, section 3 was amended recently by initiative measure (Prop. 26, § 2) approved at the November 2, 2010, election.

[6] This point also disposes of CalTax's related argument on appeal that, irrespective of whether section 19138 is a "penalty," it is a "change[] in state taxes enacted for the purpose of increasing revenues" (under the phrasing of art. 13A, § 3), and therefore unconstitutional because it was not approved by at least a two-thirds legislative vote.

Income Tax Law and the Corporation Tax Law impose a penalty on a taxpayer who underpays an estimated income tax. Those laws also specify that a penalty may not be imposed for an underpayment in specified taxable years if the underpayment was created or increased by specified changes in law. [¶] This bill would impose a penalty on a taxpayer subject to the Corporation Tax Law with a specified understatement of tax, as defined, in an amount equal to 20 [percent] of that understatement. This bill would specify that the penalty shall not be imposed if the understatement is attributable to specified changes in law." (Legis. Counsel's Dig., Sen. Bill No. 1X 28 (2007–2008 1st Ex. Sess.) 6th & 7th pars.; see *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 35 [34 Cal.Rptr.3d 520] (*Kaufman & Broad*) [Legis. Counsel's Dig. constitutes cognizable legislative history].) Thus, section 19138 has been described in its legislative history as a tax penalty in line with similar existing laws on tax penalties.

As for CalTax's point about the large rate of penalty, a legislative analysis states, in part, that the section "enacts new penalties on corporate taxpayers," and that "California [currently] conforms to a federal accuracy-related penalty equal to 20 percent of a 'substantial understatement[] of tax' . . . ." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1X 28 (2007–2008 1st Ex. Sess.) Sept. 19, 2008, pp. 1, 3; see *Kaufman & Broad, supra*, 133 Cal.App.4th at p. 35.) Thus, section 19138's rate of penalty is in line with a federal tax penalty for substantial tax understatements. This case does not present a scenario of an excessive rate of penalty unhinged from all financial considerations.

And, as for the lack of "good faith" defenses to the penalty, perhaps this is explained by the substantial tax understatement threshold specified in section 19138 (over $1 million). (Former § 19138, subd. (a)(1).)

 We conclude that section 19138 imposes a penalty rather than a state tax or a state tax increase. Consequently, the section did not require a minimum two-thirds legislative vote for passage under article 13A, section 3.[7]

---

[7] On a related issue, CalTax contends the trial court abused its discretion in excluding from evidence the declaration of Teresa Casazza, CalTax's president. We disagree.

Casazza's declaration consists of background facts about CalTax and its members, and describes the circumstances surrounding the passage of former section 19138. Casazza claims she had "personal knowledge of the unfolding of the 2008–2009 budget process, the monitoring of which is one of the central responsibilities of her job."

As for the background facts, they are irrelevant, as we have upheld CalTax's associational standing here.

As for the circumstances surrounding former section 19138's passage, we would not accept this kind of legislative history from a legislator, let alone a legislative advocate. (See *Kaufman & Broad, supra*, 133 Cal.App.4th at pp. 37–38.)

## II. As Properly Construed, Section 19138
## Satisfies Due Process

CalTax contends that section 19138 violates taxpayers' procedural due process rights because it affords no prepayment or postpayment review process, except on the ground that the Board did not "properly compute[]" the penalty amount. (§ 19138, subd. (e); see also *id.*, subd. (d).)

Section 19138 contained two provisions explicitly involving due process:

The first provision was subdivision (e), which stated: "A refund or credit for any amounts paid to satisfy a penalty imposed under this section may be allowed only on the grounds that the amount of the penalty was not properly computed by the Franchise Tax Board." (§ 19138, subd. (e).)

The second provision was subdivision (d), which stated: "Article 3 (commencing with Section 19031), relating to deficiency assessments, shall not apply with respect to the assessment or collection of any penalty imposed by subdivision (a)." (§ 19138, subd. (d).) This subdivision means that the procedures of the Revenue and Taxation Code governing deficiency assessments—including the notice and protest procedures—do not apply to the assessment and collection of section 19138 penalties.

Because exaction of a tax (or a substantial tax penalty) constitutes a property deprivation, the government must provide a predeprivation or post-deprivation procedural safeguard against unlawful exactions "to satisfy the commands of the Due Process Clause." (*McKesson Corp. v. Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 36–39 [110 L.Ed.2d 17, 35–37, 110 S.Ct. 2238].)

Subdivision (e) of section 19138 does not satisfy this due process mandate, because its procedural safeguard is limited only to penalty amounts "not properly computed" by the Board. (§ 19138, subd. (e).)

But there is a generally applicable Revenue and Taxation Code provision that allows income taxpayers to file a lawsuit to contest void tax payments, section 19382. That section states: "Except as provided in Section 19385 [(i.e., where the Board fails to mail notice of its action on a refund claim within a designated period, the taxpayer may consider the claim disallowed

and bring a judicial action)], after payment of the tax and denial by the . . . Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring a[] [judicial] action, upon the grounds set forth in that claim for refund, against the . . . Board for the recovery of the whole or any part of the amount paid."

The Board maintains that the limitation imposed by section 19138, subdivision (e)—i.e., that a refund or credit of the penalty payment is allowed only on the ground that the penalty amount was "not properly computed" by the Board—was intended to apply only to *administrative* refund claims, and that section 19382 provides a constitutionally adequate postpayment remedy in the form of a refund suit in superior court. We agree for four reasons:

First, as noted, section 19382 is a statute that applies generally to income taxpayers, including corporate taxpayers. (Rev. & Tax. Code, Administration of Franchise and Income Tax Laws, div. 2, pt. 10.2, ch. 6, § 19381 et seq.)

Second, section 19382 was not excluded from application as to section 19138, in contrast to the notice and protest procedures of section 19031 et seq. for deficiency assessments. (See § 19138, subd. (d).)

Third, we give deference to reasonable interpretations of statutes by administrative agencies charged with administering them. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11–12 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) The Board's interpretation of section 19138, subdivision (e), as limited to *administrative* refunds or credits, is reasonable in light of that subdivision's language.

Fourth, and finally, under the legal principles that guide our review, if a statute is susceptible of two constructions, one of which is constitutional and the other not, we will go with the constitutional one even though the unconstitutional construction is equally reasonable given the statute's language. (*Conservatorship of Wendland, supra,* 26 Cal.4th at p. 548.) And, a "statute will not be invalidated if it is readily susceptible to a narrowing construction that would make it constitutional." (*Governor Gray Davis Com. v. American Taxpayers Alliance, supra,* 102 Cal.App.4th at p. 464.)

For these reasons, we reject CalTax's due process claim. Section 19382 provides a constitutionally adequate postdeprivation remedy in the form of a judicial refund action in which taxpayers may contest the validity of the section 19138 tax penalty.

## DISPOSITION

The judgment is affirmed. The Board is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Raye, P. J., and Sims, J.,* concurred.

A petition for a rehearing was denied January 4, 2011, and appellant's petition for review by the Supreme Court was denied March 16, 2011, S189996.

---

*Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.